**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**MARGARITA RAMIREZ DE FERNANDEZ,**
**Plaintiff,**

**v.** **Case No. 15-C-1361**

**JEH JOHNSON, Secretary of U.S. Department of Homeland Security, et al.,**
**Defendants.**

---

## DECISION AND ORDER

The plaintiff, Margarita Ramirez de Fernandez, filed a complaint seeking review of a decision by the district director of the United States Customs and Immigration Service ("USCIS") to deny her an adjustment of status to that of lawful permanent resident of the United States. Before me now[1] is the defendants' motion to dismiss the complaint for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

According to the allegations of the complaint, Ramirez is a native-born Peruvian citizen who has resided continuously in the United States since February 1999. She is 74 years old. In 1999, Ramirez received a C-1 transit visa at the U.S. Embassy in Lima, Peru. C-1 visas are nonimmigrant visas for persons traveling in immediate and continuous transit through the United States en route to another country. *See* 22 C.F.R. § 41.71(a). One requirement for obtaining such a visa is that the applicant satisfy the consular officer that he or she is in possession of tickets to travel from the United States

---

[1] This case was originally assigned to Judge Randa. When Judge Randa became unavailable to preside over cases, the case was reassigned to a magistrate judge. When the parties did not consent to the magistrate judge's jurisdiction, the case was reassigned to Judge Stadtmueller, who then recused himself. The case was reassigned to me on August 15, 2016.

to a third country or has made other travel arrangements. *Id.* § 41.71(a)(2). When Ramirez applied for her transit visa, her US-born grandchildren were visiting their Mexican grandparents in Mexico. Ramirez had planned to travel from Peru to Miami, Florida, and then on to Mexico City, to see her grandchildren while they were visiting Mexico. Ramirez alleges that when she applied for her visa, she already possessed airline tickets for this trip. The U.S. Embassy in Peru issued the transit visa. The visa authorized Ramirez to remain in the United States until March 1999.

When she arrived in Miami on February 3, 1999, Ramirez requested admission to the United States on her transit visa to visit her family in Chicago on her way to Mexico City. An immigration officer at Miami International Airport inspected Ramirez and granted her admission to the United States, at which time she flew from Miami to Chicago. Shortly after arriving in Chicago, Ramirez learned that her grandchildren had returned to the United States from their trip to Mexico, and for this reason Ramirez did not travel to Mexico to visit them as planned. Instead, she remained in the United States, and she has been here ever since.

In 2013, Ramirez's daughter, who was by then a United States citizen, filed a visa petition for her mother, and Ramirez filed an application for an adjustment of status with USCIS. In connection with this application, the Milwaukee office of USCIS interviewed Ramirez. As part of the interview, Ramirez was asked whether she purchased tickets to travel to Mexico after entering the United States, and she truthfully responded that she did not. Ramirez does not recall being asked whether she had previously had tickets to Mexico, but she alleges that she would have truthfully said that

she did. During the interview, USCIS did not take a written statement from Ramirez regarding the circumstances of her entry.

On August 1, 2014, the Milwaukee USCIS office denied Ramirez's application for an adjustment of status because she had not proven than she did not commit fraud at the time of her entry.[2] It cited 8 U.S.C. § 1182(a)(6)(C)(i), which renders inadmissible an individual who is found to have misrepresented a material fact while applying for admission. USCIS also alleged that Ramirez stated in her interview that she never had a ticket to travel from Miami to Mexico City. Ramirez disputes having made this statement and contends that, in fact, she did possess such tickets. Ramirez attempted to obtain proof that she purchased tickets from the airline, but the airline was unable to assist her.

On September 3, 2014, Ramirez filed a motion to reopen her adjustment-of-status application. She attached to the motion her affidavit, in which she explained the facts surrounding her entry and denied USCIS's claim that she testified during her interview to never having acquired a ticket to fly from Miami to Mexico City. USCIS denied the motion to reopen on February 18, 2015.[3] In its decision, USCIS continued to assert that Ramirez denied ever having tickets to fly to Mexico City, and that she must instead have procured her admission to the United States by fraud.

In this action, Ramirez seeks to have the decisions of USCIS vacated, and to obtain an order requiring USCIS to approve her application for an adjustment of status.

[2] The parties have not filed a copy of the decision denying Ramirez's application for an adjustment of status. My summary of the decision's contents is taken from the allegations of the plaintiff's complaint.

[3] Again, the parties have not filed a copy of the USCIS decision to deny Ramirez's motion to reopen. My summary of the decision's contents is taken from the allegations of the complaint.

However, Ramirez has not identified her legal theory. That is, she does not explain the grounds on which she challenges USCIS's decision. Presumably, she challenges its factual determination that she did not possess tickets to fly to Mexico City at the time she was admitted to the United States. It is also possible that Ramirez contends that USCIS did not afford her sufficient procedural rights in the course of making this factual determination. In this regard, the plaintiff cites the due-process clause of the Fifth Amendment in her complaint. *See* Compl. ¶ 2. But she does not specifically allege that USCIS's procedures were deficient or identify the process to which she believes she was due.

In moving to dismiss the complaint for lack of jurisdiction, the government does not dispute that Ramirez has pleaded a valid cause of action. Instead, it contends that her suit is barred because she has not exhausted her administrative remedies.[4] The government does not contend that any specific administrative remedies are currently available to the plaintiff. Indeed, the regulation governing USCIS's authority to adjudicate an application for an adjustment of status provides that "[n]o appeal lies from the denial of an application by the director." 8 C.F.R. § 245.2(a)(5)(ii). However, the government points out that the plaintiff may challenge the denial of her application for an adjustment of status if and when removal proceedings are commenced against her. If the government commences removal proceedings, then an immigration judge will have exclusive jurisdiction to adjudicate her application for an adjustment of status. *See*

[4] It is not clear to me that lack of exhaustion deprives a district court of subject matter jurisdiction. Rather, lack of exhaustion would seem to be a claim-processing rule that does not relate to jurisdiction. *See Issaq v. Holder*, 617 F.3d 962, 968 (7th Cir. 2010). However, for purposes of this motion, I do not need to decide whether lack of exhaustion is a jurisdictional defect and will simply assume that it is.

8 C.F.R. § 1245.2(a)(1)(i). If the immigration judge denies the application, the plaintiff may obtain review by the Board of Immigration Appeals. *McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000). In *McBrearty*, the Seventh Circuit held that a suit to obtain review of a district director's denial of an application for an adjustment of status is "premature" because the applicant may seek administrative review of the denial if and when the government commences removal proceedings. *Id.* Under *McBrearty*, then, the plaintiff's suit would seem to be premature and subject to dismissal for failure to exhaust administrative remedies.

However, in a later case, *Iddir v. INS*, 301 F.3d 492 (7th Cir. 2002), the Seventh Circuit allowed a number of individuals to challenge the district director's denial of their applications for adjustment of status without awaiting the initiation of removal proceedings. In *Iddir*, the district director did not deny the applications on their merits. Instead, he failed to act on the applications within the one-year period in which the INS was allowed to grant the applications. Once the one-year period expired, the INS had no choice but to deny the applications. After receiving notice of the denials, the applicants filed actions in two district courts, seeking writs of mandamus to compel the INS to adjudicate their status. After the district courts dismissed these actions, the applicants appealed.

On appeal, the government argued, among other things, that the applicants had not exhausted their administrative remedies by waiting for the INS to commence removal proceedings against them and challenging the denial of their applications as part of those proceedings. *Id.* at 498–99. The Seventh Circuit rejected this argument, holding that the case fell within several exceptions to the exhaustion requirement. First,

the court found that the INS had no plans to initiate removal proceedings against the applicants, and that therefore the case fell within the exception that applies when "requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an 'indefinite timeframe for administrative action.'" *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992)). The court also found that the case fell within exceptions that apply when appealing through the administrative process would be futile because the agency has already predetermined the issue, and when the agency lacks authority to grant the relief requested. Here, the court found that these exceptions applied because the INS had already determined that it lacked legal authority to grant the applications after the expiration of the one-year period. *Id.* at 499.

In the present case, the government has not stated that it has any plans to commence removal proceedings against Ramirez. Thus, this case might be thought to fit within the first exception to the exhaustion requirement, as the Seventh Circuit understood that exception in *Iddir*. However, in *McBrearty*, the Seventh Circuit applied the exhaustion requirement even though the government had not yet commenced removal proceedings against the applicants and did not appear to have any plans to do so. *See McBrearty*, 212 F.3d at 987 (noting that administrative review would be available "if and when" removal proceedings were initiated). So *Iddir* and *McBrearty* appear to be in tension on this point. However, that tension may be resolved by noting that in *Iddir*, the court was not concerned merely with the prospect of indefinite delay, but also with the fact that the administrative process could afford the applicants no relief. *See* 301 F.3d at 499 ("The appellants need not have pursued and exhausted their claims at some distant future time through an administrative process that could

accord them no relief."). In *McBrearty*, the applicants could have obtained relief during removal proceedings, and so requiring them to wait and use that process before seeking judicial review would not have been futile. Likewise, in the present case, Ramirez could obtain relief from the district director's denial of her application if she waited for the commencement of removal proceedings. In the course of those proceedings, Ramirez could challenge the district director's factual determination that she lied about having airline tickets at the time of her entry into the United States, and an immigration judge might choose to believe her account of these events and grant her an adjustment of status. Thus, this case is controlled by *McBrearty* rather than *Iddir*.

I also note that Ramirez has not identified any prejudice that she would suffer if she did not receive immediate review of the denial of her application for an adjustment of status. Because the government has no plans to initiate removal proceedings against her, she is under no present threat of being removed. If the government commences removal proceedings, she may at that time challenge USCIS's refusal to adjust her status. Thus, I cannot find that Ramirez would be prejudiced by having to wait until removal proceedings are commenced to exhaust her administrative remedies. *Cf. Massignani v. INS*, 438 F.2d 1276, 1277–78 (7th Cir. 1971) (requiring plaintiff to await commencement of deportation proceedings to challenge denial of application for permanent residence, and noting that plaintiff had not shown that waiting for the commencement of deportation proceedings would impair her rights).

Accordingly, the government's motion to dismiss for lack of exhaustion will be granted. However, I also note that this case would seem to fall within 8 U.S.C. § 1252(a)(2)(B), which provides that

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

In the present case, the plaintiff seeks review of a "judgment regarding the granting of relief under" 8 U.S.C. § 1255, which is the section that governs adjustment of status. Thus, § 1252(a)(2)(B)(i) would seem to deprive me of subject matter jurisdiction. *See McBrearty*, 212 F.3d at 987 (holding that jurisdiction-stripping provision bars challenge in district court to district director's refusal to adjust an applicant's status to lawful permanent resident).[5] The government has not argued that this jurisdiction-stripping provision applies to this case, but because I have an independent obligation to police my own jurisdiction, *Smoot v. Mazda Motors of Am.*, 469 F.3d 675, 678 (7th Cir. 2006), I must consider it.

Ordinarily, when I notice a jurisdictional defect that the parties have not raised, I give the party who bears the burden of proving that jurisdiction exists an opportunity to

[5] *McBrearty* notes that the jurisdiction-stripping provision might not apply to a case presenting a constitutional challenge. 212 F.3d at 987. However, after *McBrearty* was decided, Congress passed the REAL ID Act of 2005, which added subparagraph (D) to § 1252(a)(2). That subsection provides that "nothing in subparagraph (B) . . ., or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review *filed with an appropriate court of appeals in accordance with this section*." (Emphasis added.) Subparagraph (B) makes clear that all judicial review is barred "except as provided in subparagraph (D)." Thus, any constitutional challenge or question of law that this case might present can only be raised in the court of appeals as part of a petition for review.

show cause why the case should not be dismissed for lack of subject matter jurisdiction. However, because in this case I have already determined that the case must be dismissed for lack of exhaustion, it would be futile to grant the plaintiff such an opportunity. Instead of doing that, I will just note the potential jurisdictional defect and dismiss the case without prejudice for lack of exhaustion.

For the reasons stated, **IT IS ORDERED** that the defendants' motion to dismiss is **GRANTED**. This case is dismissed without prejudice for failure to exhaust administrative remedies. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this1st day of September 2016.

s/ Lynn Adelman

LYNN ADELMAN
District Judge